UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
:
In re GLOBAL CROSSING, LTD. : 02 Civ. 910 (GEL)
SECURITIES LITIGATION :
: **OPINION AND ORDER**
----------------------------------------------------------------x

Jay W. Eisenhofer, Sidney S. Liebesman, Michael J. Barry, Michelle T. Wirtner, Grant & Eisenhofer, P.A., Wilmington, DE, <u>for Lead Plaintiffs Public Employees Retirement System of Ohio and State Teachers Retirement System of Ohio</u>.

James A. Beha II, Winston & Strawn LLP, New York, NY, <u>for Defendant J.P. Morgan Chase & Co.</u>

GERARD E. LYNCH, <u>District Judge</u>:

      In this consolidated class action arising from the alleged accounting improprieties at the telecommunications firm Global Crossing, Ltd. ("GC"), and its subsidiary Asia Global Crossing Ltd. ("AGC"), Count XX of the Second Amended Consolidated Class Action Complaint ("complaint") charges J.P. Morgan Chase & Co. ("JPMC") with control-person liability pursuant to Section 15 of the Securities Act of 1933. JPMC moves to dismiss this count. The motion will be denied.

## BACKGROUND

      The facts set forth below, drawn from the complaint,[1] must be taken as true for purposes of this motion. See <u>Bolt Elec., Inc. v. City of New York</u>, 53 F.3d 465, 469 (2d Cir. 1995).

      The alleged fraud underlying plaintiffs' complaint, and this motion, has been described in this Court's previous opinions, and the facts will be repeated here only to the extent that they are

---

    [1] All references to the "complaint" refer to the Second Amended Consolidated Class Action Complaint.

relevant to JPMC's motion.  See, e.g., In re Global Crossing, Ltd. Sec. Litig., 322 F. Supp. 2d 319 (S.D.N.Y. 2004); In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189 (S.D.N.Y. 2003). According to plaintiffs, AGC was integral to GC's scheme to defraud the public and its investors.  Specifically, plaintiffs allege that GC and AGC booked revenue in the hundreds of millions of dollars from economically worthless swap transactions in which they simply exchanged telecom capacity between themselves or with other members of the telecom industry.

As to JPMC, plaintiffs allege that JPMC acted as a controlling person of its subsidiary J.P. Morgan Chase Securities, Inc. ("Securities"), which was a member of the underwriters group for AGC's October 2000 initial public offering of its common stock.  (Compl. ¶ 1239.) Securities was the successor to Chase H&Q and Chase Securities Inc.  (Id. ¶ 103.)  Plaintiffs allege that the AGC IPO Registration Statement contained materially false and misleading statements regarding AGC.  The complaint specifically alleges that:

> [b]y virtue of its ownership, executive conditions, superior positions, contractual rights, participation in and/or interaction in the operations and/or underwriting of Offerings for [AGC] . . . [JPMC] had the power to influence and control and did influence and control, directly or indirectly, the decision-making of [Securities], including the content and dissemination of the various statements which [p]laintiffs contend are false and misleading. . . . [JPMC] and/or its predecessors in interest, had direct involvement in the day-to-day operations of [Securities] and/or its predecessors in interest, and its employees and agents, and therefore are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. . . . As a direct and proximate result of [JPMC's] wrongful conduct [p]laintiffs and other members of the Class suffered damages in connection with their purchase or acquisition of [AGC] securities.  (Id. ¶¶ 1239-41.)

Moreover, according to plaintiffs, Securities "is a wholly-owned subsidiary of [JPMC] and is

2

held out as part of J.P. Morgan's 'Investment Bank' franchise; the subsidiary's results are consolidated with the results of the rest of [JPMC's] business and all revenues from [Securities] flow to [JPMC]; and [Securities] does not have any independent directors separate from those elected by [JPMC's] shareholders and its executive officers are also officers of [JPMC]." (P. Mem. 4 n.2 (citing J.P. Morgan 2000 Annual Report filed with the SEC on Form 10-K on March 30, 2001, at 1, 10, 110, 116-17).)[2]

In addition to alleging facts about JPMC's relationship to Securities, plaintiffs attempt to paint a picture of collusion between various J.P. Morgan entities and GC. Plaintiffs point out that Gary Winnick, GC's Chairman, was appointed to J.P. Morgan's National Advisory Board and Maria Elena Lagomasino, CEO of J.P. Morgan's Private Bank, was appointed as a director on the AGC's board of directors in April 2001. "Through the activities of J.P. Morgan's wholly-owned subsidiaries, the appointment of Winnick to J.P. Morgan's National Advisory board and the presence of Lagomasino on the [AGC] Board, J.P. Morgan gained extensive knowledge about the integrity of [GC] and [AGC's] business and was in the distinct position of being able to warn investors of the problems in [GC] and [AGC's] business that were evident at the time of the [AGC] IPO." (P. Mem. 4 (citing Compl. ¶¶ 103, 846-50, 855).) But "[t]hese warnings were ignored and [Securities, in its capacity as an underwriter] instead sold 3,000,060 shares of [AGC]

---

[2] Defendant argues that the 2000 Annual Report "does not say what plaintiffs claim about the 'executive officers' of Securities," and correctly point out that plaintiffs failed to provide copies of the Report's pages to which they cite. Plaintiffs also cite that JMPC is registered as a "bank holding company" with the Board of Governors of the Federal Reserve Board under the U.S. Bank Holding Act of 1965 ("BHCA"). (P. Mem. 5.) The BHCA defines "bank holding company" as "any company which has control over any bank or any company." As defendant points out (D. Reply. Mem. 3), plaintiffs fail to specify why this information is relevant or which bank JPMC so holds. Defendant suggests the bank it holds is not Securities, which it urges is not a bank, but rather JPMorgan Chase Bank. (Id.)

3

to the investing public." (Id. (citing Compl. ¶ 639).) "[JPMC] served as one of Gary Winnick's personal bankers and, through its subsidiaries including [Securities] and J.P. Morgan Private Bank, earned millions of dollars in fees from [AGC] through underwriting activities, letters of credit, and personal loans made to [GC] and [AGC] directors and executives." (Id. (citing Compl. ¶ 103).)

## DISCUSSION

I.  Standard on a Motion to Dismiss

For the purposes of this motion to dismiss, the facts as alleged in the plaintiffs' complaint must be taken as true, Bolt Elec., 53 F.3d at 469, and all reasonable inferences must be drawn in the plaintiffs' favor. Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004). At the same time, "[g]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint as exhibits or incorporated in it by reference, or, even documents that may not be incorporated by reference but are integral to the complaint. Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). In addition to facts alleged in the complaint, the Court may take judicial notice of public disclosure documents filed with the SEC. Kramer v. Time Warner Inc., 937 F.2d 767, 773-74 (2d Cir. 1991). Ultimately, this Court may only dismiss a complaint if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Patel v. Searles, 305 F.3d 130, 135 (2d Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (internal quotation marks omitted)).

4

II.     The Section 15 Claim

    A.     Elements

    Under Section 15 of the Securities Act of 1933:

> [e]very person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under [Sections 11 or 12(a)(2)], shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o. In order to state a claim under Section 15, a plaintiff must allege (a) a primary violation of Sections 11 or 12 by a controlled person, and (b) control by the defendant of the primary violator. See Burstyn v. Worldwide Xceed Group, Inc., No. 01 Civ. 1125 (GEL), 2002 WL 31191741, at *7 (S.D.N.Y. Sept. 30, 2002); see also Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998).

    To be liable as a control person, the defendant "must actually possess, in fact, rather than in theory, the ability to direct the actions of the controlled person." Wallace v. Buttar, 239 F. Supp. 2d 388, 396 (S.D.N.Y. 2003). In other words, plaintiffs must show both that the defendant "possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise," SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1472-73 (2d Cir. 1996) (internal citation and quotation marks omitted); In re Blech Sec. Litig., 961 F. Supp. 569, 586 (S.D.N.Y. 1997), and that defendant had "actual control over the transaction in question." Ross v. Bolton, No. 83 Civ. 8244 (WK), 1989

WL 80428 (S.D.N.Y. Apr. 4, 1989) (internal citation and quotation marks omitted); see Wallace, 239 F. Supp. 2d at 396; In re CINAR Corp. Sec. Litig., 186 F. Supp. 2d 279, 319 (E.D.N.Y. 2002). Conclusory allegations of control are insufficient as a matter of law. See In re Deutsche Telekom AG Sec. Litig., No. 00 Civ. 9475 (SHS), 2002 WL 244597, at *5-*7 (S.D.N.Y. Feb. 20, 2002); Converse, Inc. v. Norwood Venture Corp., No. 96 Civ. 3745 (HB), 1997 WL 742534, at *3-*4 (S.D.N.Y. Dec. 1, 1997); Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., 941 F. Supp. 1369, 1378-79 (S.D.N.Y. 1996); Martin v. EVP Second Corp., No. 90 Civ. 7074 (LLS), 1991 WL 131176, at *3 (S.D.N.Y. July 9, 1991).

B.  Pleading Standard

Section 15 claims are governed by the notice-pleading standard articulated in Rule 8, Fed. R. Civ. Proc., and must provide defendants "with fair notice of [plaintiffs'] theory of control." In re WorldCom, Inc., Sec. Litig., Nos. 02 Civ 3288, 03 Civ. 890, 2004 WL 1097786, at *3 (S.D.N.Y. May 18, 2004). "The heightened pleading standard under Rule 9(b) or the PSLRA does not apply because fraud and scienter are not necessary elements of the claim." In re Vivendi Universal, S.A., No. 02 Civ. 5571, 2003 WL 22489764, at *22 (S.D.N.Y. Nov. 3, 2003).

B.  Application to Plaintiffs' Claim

JPMC argues that plaintiffs allegations are insufficient to sustain a Section 15 control-person claim because plaintiffs have failed to allege that JPMC "control[led]" Securities. Plaintiffs argue that the facts alleged in the complaint pertinent to JPMC are sufficient to establish control.[3]

---

[3] Plaintiffs contend that JPMC's motion does not challenge the sufficiency of plaintiffs' allegations regarding Securities' primary liability. (P. Mem. 3.) Although defendant's memorandum in support of the motion was not entirely clear about whether it challenges

6

Although "it is a well-settled principle of corporate law that 'a parent corporation and its subsidiary are regarded as legally distinct entities,' " In re WorldCom, Inc., Sec. Litig., 2004 WL 1097786, at *3, plaintiffs point to persuasive authority in which courts have sustained Section 15 claims against a parent corporation for the acts of a subsidiary on allegations similar to those plaintiffs bring here. (P. Mem. 8.) See Pollack v. Laidlaw Holdings, Inc., No. 90 Civ. 5788, 1995 WL 261518, at *18 (S.D.N.Y. May 3, 1995) ("[As] Laidlaw Holdings controlled both Laidlaw Equities and Laidlaw Asset Management through one hundred percent stock ownership and through common officers and directors . . . , plaintiffs have provided prima facie evidence of Laidlaw Holdings' status as a controlling person."); Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452, 484 (2001) (allegations that "EYB 'owned and controlled' FASB and K&W by exercising 'direct, daily supervision, oversight and control' through common personnel and shared offices" and that "FASB and K&W [was] 'the corporate vehicle through which' EYB provided administrative services to its clients" sufficient to allege control); see In re Indep. Energy Holdings, PLC Sec. Litig., 154 F. Supp. 2d 741, 770 (S.D.N.Y. 2001) (allegations that parent company conducted business through wholly owned subsidiaries with common management sufficient to allege control); Borden, Inc. v. Spoors Behrins Campbell & Young, Inc., 735 F. Supp. 587, 591 (S.D.N.Y. 1990) (allegation that "defendants were sole shareholders of [plaintiff] clearly meets th[e] standard [of alleging control because it] strongly suggest[s] that [defendants] had the potential power to influence and direct [plaintiff's] activities"); see also In re Enron Corp. Sec., No. MDL-1446, H-01-3624, 2004 WL 3410449, at *3-4 (S.D. Tex. April 6, 2004).

---

plaintiffs' allegations as to the primary violation, since JPMC failed to respond to plaintiffs' charge in its reply brief, the Court accepts plaintiffs' characterization, and accordingly does not reach the sufficiency of plaintiffs' allegations as to the primary violation.

Defendant puts forth In re WorldCom, Inc., Sec. Litig., 2004 WL 1097786, as contrary authority, but as plaintiffs point out, upon closer inspection, the facts there are distinguishable. In WorldCom, Judge Cote dismissed a Section 15 claim against a parent corporation as a control person for its subsidiary, but only after the plaintiffs "had the benefit of extensive discovery," leaving only the plaintiffs' "implied assertion" that the parent was the control person of its subsidiary by virtue of the parent-subsidiary relationship Id. at *3 & n.10. The mere existence of a parent/subsidiary relationship may be an insufficient basis from which to infer control for allegations of Section 15 liability, In re WorldCom, Inc., Sec. Litig., 2004 WL 1097786, at *3, but plaintiffs have pled more than that. Although it is true as defendant points out that plaintiffs' arguments and assertions sometimes seem to "blow fog" more than to provide notice of the claim (D. Reply. Mem. 4), once the smoke is clear, sufficient facts remain to allege control-person liability against JPMC. Plaintiffs have alleged that Securities is JPMC's wholly owned subsidiary, that the directors of both corporations were "interchangeab[le]" (P. Mem. 7), and that JPMC "had direct involvement in the day-to-day operations of [Securities]" (Compl. ¶ 1240). These facts, viewed in the light most favorable to plaintiffs, suggest that JPMC controlled Securities in general and for the purposes of the transactions at issue. Under the liberal notice pleading rules, these allegations are sufficient to state a claim of control under Section 15 of the Securities Act.

## CONCLUSION

For the forgoing reasons, JPMC's motion to dismiss is denied.

SO ORDERED.

Dated: New York, New York
August 5, 2005

                                                                                     GERARD E. LYNCH
                                                                                United States District Judge