UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
:
IN RE GLOBAL CROSSING            :        02 Civ. 910 (GEL)
SECURITIES LITIGATION            :
                                 :        **OPINION AND ORDER**
                                 :
------------------------------------x

GERARD E. LYNCH, <u>District Judge</u>:

In this complex multi-district securities class action case, the Lead Plaintiffs have submitted a proposed settlement agreement with defendants Citigroup, Inc., Citigroup Global Markets Holdings Inc. f/k/a Salomon Smith Barney Holdings Inc., Citigroup Global Markets Inc. f/k/a Salomon Smith Barney Inc. ("SSB"), Jack Grubman, Christine Gochuico, Kevin McCaffrey, and Michael Carpenter (collectively, the "Citigroup defendants") for the Court's approval. The Court preliminarily approved the settlement on March 8, 2005, and held a fairness hearing on June 30, 2005. On June 9, 2005, counsel for the Lead Plaintiffs submitted a motion for attorneys' fees.

Having carefully considered the various objections to the settlement and proposed attorneys' fees award that were discussed both at the hearing and through materials submitted by the objectors, the settling parties, and counsel for the Lead Plaintiffs, the Court approves the settlement agreement, as modified by a stipulation entered by the parties at the fairness hearing. The Court also grants Lead Plaintiffs' counsel's application for attorneys' fees, substantially for the reasons set forth on the record during the fairness hearing on June 30. The various objections are overruled, also primarily for reasons set forth on the record on June 30, except to the extent

that the objection of certain non-settling underwriter defendants has been rendered moot by the stipulation.[1]

In connection with the fairness of the settlement amount, it is important to understand, as some objectors have not understood, that this settlement is a partial settlement, not intended to accomplish full satisfaction of plaintiffs' claimed damages.  Lead Plaintiffs have already succeeded in obtaining a much larger settlement from other defendants.  See In re Global Crossing Sec. and ERISA Litig., 225 F.R.D. 436 (S.D.N.Y. 2004) (approving proposed $325 million partial settlement with directors, officers, and employees of Global Crossing Ltd. and Asian Global Crossing Ltd.).  Importantly, the case still remains pending against other defendants.  The settlement with the defendants here settles claims that, if further litigated, would have faced substantial difficulties in view of adverse case law on several significant issues.  See, e.g., Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005); In re Salomon Analyst Level 3 Litig., 350 F. Supp. 2d 477 (S.D.N.Y. 2004).  In connection with the fairness of the attorneys' fees award, the fee award is essentially the simple result of the application to the recovery effected by this settlement of the formula in the fee agreement between Lead Plaintiffs and Lead Counsel.  The fairness of that agreement was carefully scrutinized and approved by the Court in connection with the earlier settlement.  See In re Global Crossing Sec., 225 F.R.D. at 464-68.  It was fair and reasonable then, and remains so now.

---

[1] Lead Plaintiffs, the Citigroup defendants, and the non-settling underwriter defendants agreed on the record to a specific modification of the bar order language in the stipulation of settlement.  The settlement is thus approved as modified, and an amended stipulation of settlement will be submitted promptly by the parties to the Court for signature.

Only one matter raised at the fairness hearing requires a brief further comment. W. Caffey Norman, III ("Norman"), a member of the plaintiff class, objected to a provision of the settlement releasing plaintiffs' claims against the Citigroup defendants. Norman specifically objected to the release insofar as he asserts it could be construed to apply to claims asserted by Norman in a separate putative class action against some of the same defendants. See Norman v. Salomon Smith Barney, Inc., 350 F. Supp. 2d 382 (S.D.N.Y. 2004).

Plaintiffs in the present action, holders of securities in Global Crossing Ltd. and Asia Global Crossing Ltd., allege that the Citigroup defendants participated in defrauding them by, among other things, issuing analytic reports on Global Crossing and Asia Global Crossing that misrepresented the defendants' true views of the prospects of those companies. Norman is a member of the plaintiff class in this action who also was a holder of a Guided Portfolio Management ("GPM") account managed by one of the Citigroup defendants, SSB. In his separate action, Norman contends that SSB defrauded holders of GPM accounts by promising them, as a principal inducement to open such accounts, certain benefits from the experience, quality, and wisdom of SSB's research department, when in fact the research provided to account managers was compromised by bias, corruption and conflict of interest. On behalf of himself and a putative class of similarly-situated GPM account holders, Norman seeks to recover the fees paid for GPM services and the trading losses incurred as a result of Salomon's alleged misconduct. Norman, 350 F. Supp. 2d at 385. The Court has denied a motion to dismiss Norman's complaint. Id. at 392. Discovery is under way, and a motion for class certification has been submitted to this Court, fully briefed for decision.

Norman maintains that the Court should reject the broad release in the settlement agreement. He argues that by releasing "all claims of every nature and description, known and unknown, arising out of or relating to any Investment Decision in Global Crossing Securities" (Stipulation of Settlement, ¶ I(E)(bbb)), Lead Plaintiffs have agreed to release "claims that Norman and other GPM accountholders – but not the class representatives in this case – have against [SSB]." (Objection of W. Caffey Norman, III, to Proposed Partial Settlement of Class Action with the Citigroup Defendants, at 1.) The objection is unpersuasive.

Norman is quite correct that "fundamental principles underlying class actions limit the powers of the representative parties to the claims they possess in common with other members of the class." Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exchange, 660 F.2d 9, 16 (2d Cir. 1981). It follows, as Judge Friendly held in National Super Spuds, that class plaintiffs who sought damages in connection with liquidated futures contracts could not agree to release claims based on unliquidated positions. Id. at 16-17. National Super Spuds also recognized, however, that a class settlement may "prevent class members from subsequently asserting claims relying on a legal theory different from that relied upon in the class action complaint, but depending on the very same set of facts." Id. at 18 n.7. More recent cases have frequently invoked this principle to reject objections to class action settlement. See, e.g., Wal-mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 111-12 (2d Cir. 2005) (finding that objecting merchants with claims based on the same factual predicate as the lead plaintiffs were adequately represented); TBK Partners, Ltd. v. Western Union Corp., 675 F.2d 456, 462 (2d Cir. 1982) (finding that concerns of inadequate representation were not implicated when different legal claims were based on the "same factual predicate"). Indeed, for this very reason, Judge Cote recently rejected Norman's similar

objection to a virtually identical release in a settlement agreement in another shareholders' class action involving a fraud related to different securities. See In re WorldCom, Inc. Sec. Litig., 02 Civ. 3288 (DLC), 2004 WL 2591402, at *12-13 (S.D.N.Y. Nov. 12, 2004).

By the settlement at issue here, plaintiffs in this case purport to release only claims that arise out of or relate to a participating class members' decisions to invest in Global Crossing securities. As was not the case in National Super Spuds, the objectors here have precisely the same claims that Lead Plaintiffs have in common with all class members, defined by virtue of their decision to purchase securities in Global Crossing, as a consequence of allegedly false research reports issued by those defendants.

If Norman seeks, in the separate action, damages attributable to trading losses in Global Crossing securities, such damages result directly from the same alleged misconduct at issue in this case. It makes no difference whether such losses were incurred as a result of his own reliance on defendants' bogus reports (or on the integrity of the market price to which those reports presumably contributed), or were incurred by the investment decisions of an investment manager (at SSB or elsewhere) who relied on such reports in purchasing the securities on the investor's behalf. The losses were incurred as a result of the same investment decision, as a result of the same alleged misconduct, resulting in the same loss to the same plaintiff. If Norman and other GPM account holders have a different legal theory of liability based on these facts, which they believe is stronger, and therefore more likely to yield a larger recovery or a better settlement, than the theories being advanced by Lead Plaintiffs, they were free to opt out of the present class and pursue recovery based on that theory. He and they are not free, however, to remain a part of the instant class, partake of an award of damages under the present settlement,

5

and then pursue further damages in a separate action based on the same losses arising from the same investment decision as a result of the same misconduct. Any such result would be substantively unfair, as well as frustrating to class action settlements. A defendant can hardly be expected to settle an action based on claims of a particular wrong, pay damages to plaintiffs under that settlement, and then have to continue to defend claims by some of the same plaintiffs for further compensation based on the same harm.

To the extent that Norman seeks reimbursement of fees paid to SSB for the management of his GPM account, however, the case is slightly different. How the release affects that claim depends whether it can be described as "arising out of or relating to any Investment Decision in Global Crossing Securities." If the claim arises out of or relates to investment decisions, the claim is released by the present settlement. It is unclear, nor can it be determined in this action at this time, whether Norman's claim for a refund of investment management fees can be fairly so described.

As this Court characterized the Norman complaint, it asserts "a straightforward breach [of contract] claim: plaintiffs purchased a service (portfolio management) pursuant to a contract, paid the fees for that service under the contract, and now allege that they did not receive the full range of services paid for." Norman, 350 F. Supp. 2d at 387.[2] As was clear from the oral argument at the fairness hearing, Norman and SSB dispute (among many other things) the nature of the damages that can be traced to such a breach. Specifically, Norman contends that since GPM account holders were promised that their accounts would be managed based on excellent,

---

[2] As the Court noted, Norman also alleges a breach of fiduciary duty claim. Norman, 350 F. Supp. at 387. The reasoning in the text applies to that claim as well.

unbiased research, they should be entitled to a refund of the substantial management fees they paid, to the extent it can be proved that SSB provided "shoddy, useless research produced by conflicted analysts," id. at 388, *regardless of whether the account holder ever purchased any specific security as to which it can be proved that SSB issued a dishonest analytic report*. On this view, what entitles Norman to a refund is that SSB did not provide the overall quality of service that he contracted for. If this legal theory is eventually sustained as a basis for recovery in Norman, it would follow that the claim to a refund of fees does not arise from any decision to invest in Global Crossing securities, but rather from SSB's general failure to provide high quality, unbiased research. Therefore, the claims regarding the management fees would not be released under the present settlement agreement.

SSB takes a different position with respect to the potential recovery of fees in Norman. It argues that even if Norman can prove that SSB's research was corrupt *as to certain securities*, a GPM account holder whose portfolio manager did not invest in any such security based on tainted analysis did receive what he or she paid for – good investment advice based on solid analytic research – and therefore should not receive a refund of fees. On this view, if the research reports on Global Crossing (but on no other securities) indeed contained fraudulent misrepresentations, an account holder who never purchased Global Crossing securities would not be affected, and would not be entitled to a refund. If SSB prevails in this dispute in the Norman litigation, it would follow that the entitlement to a refund would actually be based on the decision to invest in Global Crossing securities, and therefore would be covered by the release in the present settlement.

Whether Norman or SSB will prevail on this issue cannot be determined at this time, and should not be determined in the context of the instant partial settlement agreement. The facts regarding SSB's GPM accounts have not been fully developed or presented to the Court, and the viability of Norman's claims has not yet been tested at all. Norman's attorneys are conducting discovery on the nature of the securities holdings in GPM accounts, and the scope of the alleged shortfalls in SSB's research products. Norman's argument that he and other GPM holders should be entitled to full refunds of their fees, regardless of particular investment decisions made in managing their portfolios, would obviously be stronger if he could demonstrate that SSB's research was pervasively biased or otherwise inaccurate, or that any corruption was limited to certain business sectors (for example, telecommunications) in which GPM accounts were systematically heavily invested. Conversely, Norman's approach would be more difficult to sustain if the evidence revealed that SSB's research was tainted only with respect to a few securities, in which only a handful of GPM accounts had holdings.

In other words, whether the release applies to Norman's claims (and to those of members of his putative class) depends heavily on what those claims ultimately turn out to be. What is known now is that the release, as worded, applies only to claims against the Citigroup defendants arising out of or relating to a decision to invest in Global Crossing securities. Those are precisely the claims being advanced in this litigation by Lead Plaintiffs on behalf of all class members, and a full release as to any such claims is entirely appropriate in exchange for a substantial payment to the class by those defendants. To the extent that Norman's claims can fairly be so characterized, it is equally appropriate that Norman, having failed to opt out of the instant class, and thus having become eligible to participate in the proceeds of this settlement, should be held

8

to have released those claims. What is uncertain at this time is whether all of Norman's claims *can* be so characterized. That is a question that can only be resolved as the facts and legal theories in his lawsuit are developed and litigated.

For these reasons, Norman's objection to the scope of the release in the present settlement agreement is without merit, and is rejected.

## CONCLUSION

For the reasons stated above, and for those stated on the record in open court on June 30, 2005, it is hereby ORDERED that:

1. The Class preliminarily certified on March 8, 2005, is finally certified, as it meets all of the requirements of Federal Rule of Civil Procedure 23(b)(3);

2. The objections to the proposed partial settlement are overruled, and the stipulation of settlement, as amended, is approved; and

3. Lead Counsel's petition for an award of attorneys' fees and reimbursement of expenses in connection with the Citigroup settlement is granted.

SO ORDERED.

Dated: New York, New York
July 8, 2005

GERARD E. LYNCH
United States District Judge