UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
:
IN RE GLOBAL CROSSING LTD.   :   02 Civ. 910 (GEL)
SECURITIES LITIGATION        :
:                                **OPINION AND ORDER**
-----------------------------------------------------------x

Daniel L. Abrams, New York, NY, <u>for movants.</u>

Peter L. Simmons, Fried, Frank, Harris, Shriver & Jacobson LLP, New York, NY, <u>for defendant Goldman, Sachs & Co.</u>

GERARD E. LYNCH, <u>District Judge</u>:

 Malik and Seeme Hasan ("the Hasans") move the Court either to declare that they have properly opted out of this securities class action or to reopen the opt-out period to permit them to opt out at this time. The motion will be granted, and the Hasans will be permitted to opt out of the settlement.

## BACKGROUND

 The following facts are essentially undisputed.

 On October 27, 2006, this Court approved a settlement of the plaintiff class's action against underwriter defendant Goldman Sachs & Co. ("Goldman") and other underwriters. The underwriters' settlement was the fourth of five seriatim settlements by which the complex Global Crossing securities and ERISA class actions were ultimately resolved. The deadline for class members wishing to opt out of the settlement was October 6, 2006. Class members who failed to opt out by this deadline are barred by the terms of the settlement from pursuing claims against Goldman and the other underwriter defendants.

The Hasans have been pursuing multiple legal actions against Goldman, with whom they maintained a brokerage account. An arbitration in Denver relating to their investments through Goldman in Global Crossing has been pending since October 15, 2004. The Hasans, separately and together, are sophisticated businesspeople and experienced investors, and they have been represented by counsel at all times relevant to this motion.

The Hasans attempted to opt out of at least one of the five Global Crossing class actions. On or about August 9, 2004, counsel for the Hasans wrote a letter to the Claims Administrator, with a copy to Goldman, headed "Re: Global Crossing, Ltd. Securities Litigation – Opt Out of Partial Settlement." (Hasan Reply Mem. Ex. 1.)[1] The letter specifically referenced a "Notice of Proposed Class Action Partial Settlement of Securities Litigation" that had been forwarded by Goldman to the Hasans,[2] and noted the "July 13, 2004 deadline for class members to exclude themselves from the proposed settlement." (Id.) The letter went on to advise that the Hasans "do wish to be excluded from the Securities Action Settlement," and urged that they be permitted to do so, notwithstanding that their letter post-dated the July 13, 2004, opt-out deadline, because they had not received notice until after that date. The July 2004 deadline related to the second partial settlement of the Global Crossing class actions, in which plaintiffs settled with various directors and officers of Global Crossing.

---

[1] Although this letter apparently was never received by the Claims Administrator, there is no real dispute that the letter was sent out: the Hasans' law firm's files contain an Express Mail receipt for the posting of the letter to the Claims Administrator, and a copy was in fact received by Goldman, recovered from its files, and produced in discovery in the arbitration.

[2] Lead plaintiffs, as is common in such class actions, communicated notice to the record holders of the relevant securities, who in many cases are brokers who hold the stock on behalf of account holders. The notice here went to Goldman, which in turn forwarded the information to its customers, including the Hasans.

The Hasans took no action with specific reference to the October 2006 underwriters' settlement. The Hasans do not allege that they did not receive notice in due course of that settlement. However, they do assert (see Merrick Decl. ¶¶ 7-9) that a copy of the notice was *not* provided to their attorney in the arbitration, even though the Court's Order preliminarily approving the settlement directed the parties to cause a notice to be served on "all legal counsel known by . . . Financial-Institution Related Defendants' Counsel to represent a Class Member" in connection with "pending litigation, arbitration or other proceeding of any other Claim against any Releasee relating to any of the Released Claims." (Order of July 25, 2006, ¶ 4(a).) Goldman was indisputably a "Financially-Related Institution" and a "Releasee" within the meaning of this Order, the Hasans' arbitration related to a "Released Claim," and Goldman's attorneys were aware of the existence of the arbitration. Goldman concedes that it neither notified the Hasans' attorney of the settlement nor provided Lead Plaintiffs or the Claims Administrator with a list of class members involved in litigation or arbitration with Goldman, or of their attorneys, so as to enable the plaintiffs or administrator to notify the attorneys of such class members.

Once the class action settlement was finalized, however, Goldman's counsel in the arbitration took action, moving for partial summary judgment in the arbitration, asserting that the Hasans' claims regarding Global Crossing are barred by the class action settlement. The Hasans then brought the instant motion, arguing that either they should be held to have opted out of the settlement already, or, if not, that the opt-out period should be extended for their benefit to enable them to opt out of the settlement now and pursue their arbitration.

# DISCUSSION

Goldman argues that the matter is simple: the Hasans failed to opt out of the underwriters' settlement by the deadline of October 6, 2006, and are therefore bound by the settlement and its accompanying release. The Hasans raise a number of objections to this analysis.

First, they argue that they did in fact opt out, by their letter of August 9, 2004. This argument is untenable. The 2004 letter can have no reference to the 2006 settlement with Goldman, which had not been reached when that letter was sent and was not reached and submitted to the Court for preliminary approval until July 2006. The letter does not purport to opt out of any future settlements, with Goldman or with anyone else, that might be reached in the Global Crossing litigation. By its own terms, the letter is captioned "Opt Out of Partial Settlement," not "Opt Out of Any and All Settlements with Respect to the Global Crossing Matter," or "Opt Out of the Global Crossing Class." (Hasan Reply Mem. Ex. 1.) The text of the letter specifically references "correspondence, dated July 14, 2004," which contained a "Notice of Proposed Class Action Partial Settlement." (Id.) It goes on to note that the letter was dated and received "after the July 13, 2004 deadline for class members to exclude themselves from the proposed settlement." (Id.) These dates make clear that "the proposed settlement" is the second Partial Settlement, preliminarily approved by the Court on April 27, 2004, for which the opt-out deadline was July 13, 2004. The letter announces the desire of the Hasans to be excluded from "the Securities Action Settlement," and seeks confirmation that they have been so excluded. (Id.) It is thus indisputable that the letter seeks only exclusion from the settlement of which the Hasans had received slightly belated notice. The impossibility of interpreting the letter in any

other way is made manifest by considering the unfairness that would result had the Hasans submitted a claim in connection with a later settlement and been told that their 2004 letter opting out of the second Partial Settlement barred them from any future participation in later settlements. As Goldman points out, "the Claims Administrator did not exclude investors who had opted out of earlier partial settlements from those to whom it sent notice of the underwriters' settlement." (Goldman Mem. 11.) It would have been impermissible for the Claims Administrator to do so.

Second, the Hasans argue that their time to opt out should be extended because of a failure on the part of Goldman to comply with the Court's order for providing notice to affected class members. This argument is considerably more persuasive.

Provision of notice to class members in securities class actions is a difficult undertaking. Many beneficial owners of affected securities hold their shares through financial intermediaries such as banks and brokers, and cannot be identified directly from the records of the company that issued the securities. The Court, lead plaintiffs, and settlement administrators thus must rely on such intermediaries (who, as in this case, may themselves be defendants) either to provide the administrators with the identities of shareholders or to pass along information about the proposed settlement to their customers. Since the banks and brokers have little incentive to act expeditiously, it is not uncommon for shareholders to receive such notice belatedly, as apparently occurred to the Hasans in connection with the 2004 settlement at issue in this case.

In most instances, these delays are of little moment. Where, as here, the settlement was a good one for the class, few class members choose to opt out. Whether or not shareholders are happy with the settlement, few have a large enough stake to support independent litigation

5

against the defendants, and so for most class members opting out means receiving nothing. Their only feasible option is thus to remain in the class, object if they are dissatisfied with the settlement, and file a claim if any objections are overruled.

There are, however, class members (such as the Hasans) who not only have a sufficient stake in the claims raised by the class to litigate on their own, but in fact have already undertaken legal action of some sort in relation to their claims. For these class members, opting out is a viable course. Having already undertaken litigation or arbitration to vindicate their interests, they have a genuine decision to make as to whether to abandon their own legal proceedings and accept the award that will come to them, without further expense or effort, as part of the class settlement, or to continue to push for a better recovery, by accepting the costs of further litigation and the risk of recovering nothing. For these litigants, to be foreclosed automatically by failure to appreciate the significance of a class notice, or by simply failing to receive such notice, is a genuine injustice.

For this reason, the Court's order of preliminary approval went beyond scattershot notice through financial intermediaries to target such class members directly in a manner intended to assure actual and effective notice. In addition to requiring particularized notice to persons who could be identified as shareholders and generalized notice by publication, the Court specifically provided that "in cases of pending litigation, arbitration, or other proceeding . . . against any Releasee," notice should be provided not merely to the shareholder in the normal course, but "to all legal counsel known by Lead Counsel or Financial Institution-Related Defendants' Counsel to represent a class member." (Order of July 25, 2006, ¶ 4(a).)

The clear intention of this provision was to assure that in the case of those class members who already were pursuing independent remedies, and thus would be most likely to find it in their interest to opt out of the class, notice would be provided directly – not merely through a financial intermediary or through the lead plaintiffs' efforts to identify registered shareholders – and would be provided not merely to the shareholders themselves, but to their legal counsel, who would be in a position to advise the affected class members about their interests. The Court assumed that the financial institution defendants and their lawyers would know, or would easily be able to identify, the class members who had already initiated lawsuits or arbitrations against them.

It is undisputed that, whatever notice may or may not have eventually reached the Hasans in one way or another, no notice was ever provided to their counsel in the arbitration they had maintained against Goldman since October 2004. Or rather, no notice was provided to counsel until *after* the closing of the opt-out period. Goldman attempts to defend this failure by arguing that the Hasans and their attorneys were not "known by . . . Financial Institution-Related Defendants' Counsel," because the latter term as used in the Order refers only to the firm of Fried, Frank, Harris, Shriver & Jacobson LLP, which represented Goldman (and numerous other underwriter defendants) in the class action, and the class action lawyers at Fried Frank, who did not represent Goldman in connection with the Hasan arbitration, were *not* aware of the Hasans or their attorneys. (Goldman Mem. 13-14.)

This interpretation would completely undermine the purpose of the notice provision. It would not be surprising if, as so interpreted, the provision for specific notice to the attorneys for class members who had undertaken litigation would be entirely empty, as there is no reason to

believe that Goldman, or any other defendant participating in this settlement, retained Fried Frank to handle any such arbitration or litigation. Goldman blithely asserts that it was not obliged to undertake any "affirmative investigation . . . to ascertain what Global Crossing-related arbitrations and litigations may exist so that supplemental notice could be sent to plaintiffs' counsel in those cases" (id. 14), as if such an investigation would be a time-consuming, laborious, and otherwise unnecessary obligation. But the whole point of this notice provision was to make sure that class members who were already litigating against the settling defendants would be identified and provided with notice, sent not merely to class members who might not appreciate the significance of a form notice but to the attorneys representing them in the matters, who surely would understand its significance and could effectively advise their clients.

Nor was it burdensome to identify the relevant class members or their attorneys. While Goldman and its attorneys made no effort to to provide notice to the Hasans' counsel before the expiration of the opt-out period, it evidently took little effort after the closing of that period to identify the Hasans' counsel and notify them that the arbitration was now barred by the settlement.[3] Whether or not the lawyers at Fried Frank were aware of the Hasan arbitration, both in-house and outside "Counsel" for Goldman, a "Financial Institution-Related Defendant" as defined in the Order, certainly were.[4]

---

[3] It is not clear from the record before the Court when exactly Goldman filed its motion for partial summary judgment in the Denver arbitration asserting that the Hasans' claims against Goldman in the arbitration are barred pursuant to the underwriters' settlement in this litigation. However, it is clear that a supporting affidavit filed in connection with that motion was dated May 7, 2007. (Merrick Decl. ¶ 10.)

[4] For the definition of "Financial Institution Settling Defendants," see Order of July 25, 2006, at 2. Neither the Order nor the underlying settlement agreement contains any specific definition of "Financial Institution-Related Defendants' Counsel."

8

Even assuming that the term "Financial Institution-Related Defendants' Counsel" in the Order was originally understood to refer to Fried Frank, that understanding could only have made sense on the assumption that Fried Frank would have reason either to know, or to find out, the identities of counsel for class members maintaining Global Crossing-related actions against Goldman. Those identities were surely known to Goldman's in-house counsel, who must have been monitoring such litigation and arbitration activities. It would make no sense to provide for special notice to a significant group of class members known to counsel, unless the Court assumed that counsel would for the most part know who those class members were.

That the Court acted on that assumption is confirmed by the prior settlement history in this litigation. An earlier partial settlement with Citigroup-related defendants contained a virtually identical notice provision. (See Order of March 8, 2005, ¶ 5(a).) When it developed that Citigroup's attorneys had not provided notice to shareholders' counsel in cases of pending litigation or arbitration against Citigroup, the Court, with the agreement of the Citigroup defendants, entered a further order extending the deadline for opting out and requiring the provision of notice to counsel who could be identified by counsel for those defendants. (See Order of December 2, 2005.) Goldman's argument that this situation is distinguishable because the Citigroup attorneys (the firm of Paul, Weiss, Rifkind, Wharton & Garrison) "were in fact aware of" the other proceedings against Citigroup because they were actually "handling several of those other cases" (Goldman Mem. 14) verges on the disingenuous. First, as Goldman's formulation makes clear, although the Paul Weiss lawyers were handling "several" of the matters in question, they were not handling all of them, yet the December 2, 2005, Order expressly contemplated supplemental notice not only to those litigating class members in cases handled by

9

Paul Weiss, but to counsel for any class member who "had a pending litigation, arbitration or other proceeding against" a Citigroup-related defendant, and who "are known or can be ascertained through reasonable effort by" that firm. (Order of December 2, 2005, at 2.) Second, Goldman's argument is self-defeating, in that it expressly trumpets the futility of the notice provision as Goldman wishes to interpret it. Goldman notes that "Fried Frank was not handling any such proceedings for Goldman Sachs in any tribunal" (Goldman Mem. 14), and thus on its reading had no obligation to notify anyone.

Such futility is not to be favored. The Court has broad discretion to extend the opt-out period to protect class members who failed to receive the notice contemplated by the Court. Contrary to Goldman's argument, such an extension would not defeat the parties' bargain. The parties specifically provided for a number of opt-outs that would permit the defendants to void the settlement. (See Underwriters' Settlement Agreement of Oct. 26, 2006, § XII.E.) Goldman does not contend that adding the Hasans to the insignificant number of class members who opted out would bring the number anywhere close to that triggering provision.

## CONCLUSION

Accordingly, the Hasans' motion will be granted, and they will be permitted to opt out of the settlement and pursue their arbitration against Goldman.

SO ORDERED.

Dated: New York, New York
January 24, 2008

_____
GERARD E. LYNCH
United States District Judge